Nicole M. Swift, OSB No. 141419
nswift@cablehuston.com
Nicole A.W. Abercrombie, OSB No. 144581
nabercrombie@cablehuston.com
Olivia M. Loftin, OSB No. 225812
oloftin@cablehuston.com
CABLE HUSTON LLP
1455 SW Broadway, Suite 1500
Portland, Oregon 97201
Tele: (503) 224-3092
Fax: (503) 224-3167

*Attorneys for Defendant*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| LUMBERJACK, L.P.,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF WILSONVILLE,<br><br>Defendant. | Case No. 3:26-cv-00542-YY<br><br>**DEFENDANT CITY OF WILSONVILLE'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>Pursuant to Fed. R. Civ. P. 12(b)(6)<br><br>(Oral Argument Requested) |

**TABLE OF CONTENTS**

Page


I. INTRODUCTION ..... 1

II. BACKGROUND ..... 2

III. LEGAL STANDARDS ..... 3

IV. ARGUMENT ..... 5

A. MOTION 1: Plaintiff's Takings Claims Are Time-Barred and Fail to State a Claim. ..... 5

1. The Court Should Dismiss Plaintiff's Takings Claims as Time-Barred. ..... 5

2. Alternatively, the Court Should Dismiss Plaintiff's Takings Claims for Failure to State a Claim. ..... 7

(a) Plaintiff's Federal Takings Claim Fails to State That Any Land Use Decision by the City Deprived Plaintiff of All Economically Viable Uses. ..... 8

(b) Plaintiff Fails to State a Regulatory Taking Under *Penn Central*. ..... 10

(c) Plaintiff Fails to State a Regulatory Taking Claim Under the Oregon Constitution. ..... 12

B. MOTION 2: Plaintiff's Dormant Commerce Clause Claim Should Be Dismissed for Failure to State a Claim. ..... 12

1. Plaintiff Has Failed to Sufficiently Plead that the Town Center Plan, Ordinance, and Home Depot Land Use Decisions Directly Discriminate Against Interstate Commerce. ..... 13

2. Plaintiff Has Failed to Sufficiently Plead that the Town Center Plan, Ordinance, and Home Depot Land Use Decisions Have a Discriminatory Effect on Interstate Commerce. ..... 14

3. Plaintiff Has Failed to Sufficiently Plead that the Town Center Plan, Ordinance, and Home Depot Land Use Decisions Place a Substantial Burden on Interstate Commerce. ..... 15

V. CONCLUSION ..... 15

# TABLE OF AUTHORITIES

Page(s)

Cases

*Am. Fuel & Petrochemical Mfrs. v. O'Keeffe*,
903 F.3d 903 (9th Cir. 2018) ..... 12

*Andrade-Tafolla v. United States*,
536 F. Supp. 3d 764 (D. Or. 2021) ..... 4, 9

*Arnold v. IBM*,
Corp., 637 F.2d 1350 (9th Cir. 1981) ..... 7

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..... 4, 9

*Bell Atl. Corp. v. Twombly*,
550 U.S. 554 (2007) ..... 4

*Boise Cascade Corp. v. Bd. of Forestry*,
325 Or. 185 (1997) ..... 8, 12

*Cal. Sansome Co. v. U.S. Gypsum*,
55 F.3d 1402 (9th Cir. 1995) ..... 3

*Chinatown Neighborhood Ass'n v. Harris*,
794 F.3d 1136 (9th Cir. 2015) ..... 15

*David Hill Dev., LLC v. City of Forest Grove*,
688 F. Supp. 2d 1193 (D. Or. 2010) ..... 5

*Davis v. Harvey*,
789 F.2d 1332 (9th Cir. 1986) ..... 5

*Dodd v. Hood River Cnty.*,
317 Or. 172 (1993) ..... 8

*Esplanade Props., LLC v. City of Seattle*,
307 F.3d 978 (9th Cir. 2002) ..... 8

*Evox Prods. LLC v. Chrome Data Sols., LP*,
No. 3:16-CV-0057-PK, 2018 WL 6059530 (D. Or. Sept. 6, 2018) ..... 3

*Flynt v. Bonta*,
131 F.4th 918 (9th Cir. 2025) ..... 13, 15

*Foshee v. Lane Cnty.*,
No. 6:24-CV-00447-MC, 2024 WL 3970663 (D. Or. Aug. 26, 2024) ..................................... 5

*Huynh v. Chase Manhattan Bank*,
465 F.3d 992 (9th Cir. 2006) ................................................................................................ 3

*Lucas v. S.C. Coastal Council*,
505 U.S. 1003 (1992)............................................................................................................. 7

*Lynch v. Multnomah Cnty.*,
No. 1:23-CV-01434-IM, 2024 WL 5238284 (D. Or. Dec. 27, 2024)....................................... 5

*Montana v. City of Portland*,
No. 3:23-CV-00219-YY, 2025 WL 1809258 (D. Or. Apr. 8, 2025) ...................................... 14

*O'Connor v. Boeing N. Am.*,
311 F.3d 1139 (9th Cir. 2002) .............................................................................................. 4

*Penn Cent. Transp. Co. v. City of New York*,
438 U.S. 104 (1978)........................................................................................................ 7, 10

*Pharm. Rsch. & Mfrs. of Am. v. Stolfi*,
153 F.4th 795 (9th Cir. 2025) ......................................................................................... 7, 10

*Pike v. Bruce Church, Inc.*,
397 U.S. 137 (1970)............................................................................................................. 13

*Rancho de Calistoga v. City of Calistoga*,
800 F.3d 1083 (9th Cir. 2015) .............................................................................................. 11

*Rosenblatt v. City of Santa Monica*,
940 F.3d 439 (9th Cir. 2019) ......................................................................................... 12, 13

*Starr v. Baca*,
652 F.3d 1202 (9th Cir. 2011) .............................................................................................. 4

*Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*,
216 F.3d 764 (9th Cir. 2000) ............................................................................................ 7, 9

*Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*,
535 U.S. 302 (2002)........................................................................................................ 7, 10

*Wal-Mart Stores, Inc. v. City of Turlock*,
483 F. Supp. 2d 987 (E.D. Cal. 2006)................................................................................. 14

Statutes

42 U.S.C. § 1983 .......... 5, 7

O.R.S. 12.110(1) .......... 5

U.S. Const. amend. V .......... 7

Rules

Fed. R. Civ. P. 12(b)(6) .......... 1, 3, 4

L.R. 7 .......... 1

**LOCAL RULE 7-1 COMPLIANCE**

Pursuant to L.R. 7-1, on May 1, 2026, undersigned counsel for Defendant City of Wilsonville ("the City") conferred with counsel for Plaintiff Lumberjack, L.P. ("Plaintiff") via videoconference in a good faith effort to resolve the issues at dispute in this Motion to Dismiss ("Motion"). The parties were unable to do so.

**MOTION**

Pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6), the City respectfully moves to dismiss Plaintiff's Complaint. Plaintiff's First and Second Claims for Relief—alleging takings claims under the federal and state Constitutions—are time-barred, and alternatively, they fail to state a claim upon which relief may be granted. Plaintiff's Third Claim for Relief under the Dormant Commerce Clause also fails to state a claim upon which relief may be granted.

**LEGAL MEMORANDUM**

## I. INTRODUCTION

In an attempt to shift the blame of its own failed business dealings onto the City, Plaintiff brings this action, alleging that the City's 2019 zoning and use regulations resulted in takings in violation of the Oregon and United States Constitutions and a violation of the Dormant Commerce Clause. These claims should be dismissed, in their entirety, under FRCP 12(b)(6).

First, Plaintiff's federal and state takings claims are barred by their applicable two-year and six-year statutes of limitations because the subject zoning and use regulations were enacted in 2019, and this case was not brought until 2026. Plaintiff's takings claims also fail to state a claim upon which relief may be granted. Pursuant to its own allegations, Plaintiff has not been deprived of all economically beneficial uses of its property, nor has Plaintiff been subjected to a regulatory taking.

/ / /

/ / /

Second, Plaintiff has not adequately pled its Dormant Commerce Clause claim, as the regulations do not discriminate against interstate commerce, do not have a discriminatory effect on interstate commerce, and do not impose a "substantial burden" on interstate commerce.

For these reasons and other reasons discussed below, the Court should grant the City's Motion and dismiss Plaintiff's Complaint in its entirety.

## II. BACKGROUND

Plaintiff filed its Complaint against the City of Wilsonville on March 20, 2026. (*See generally* Complaint (ECF No. 001) ("Complaint" or "Compl."). Plaintiff alleges that its former tenant, Fry's Electronics ("Fry's"), successfully operated a big-box retail store on Plaintiff's property in Wilsonville for decades (the "Property"). (Compl. ¶¶ 1–2, 37, 49, 116.) In 2019, the City adopted the Town Center Plan, with a goal of transforming "Wilsonville's Town Center [("Town Center")] into a vibrant, walkabout destination that inspires people to come together and socialize, shop, live, and work." (*Id.* ¶ 59) (internal quotation omitted). Pursuant to Ordinance 835, effective on June 5, 2019 (the "Ordinance"), the City changed the plan and zoning in area where the Property is located to encourage mixed-use development for the Town Center. (*Id.* ¶ 3, 66.) The Ordinance limited retail building sizes to 30,000 square feet and encouraged walkable development instead of car-dependent uses. (*Id.* ¶¶ 64–65.) As of the Ordinance's effective date in 2019, Fry's use and the building size (159,000 square feet) became a lawfully non-conforming use of the Property. (*Id.* ¶¶ 66–67.)

Fry's stores around the country began to struggle financially with the rise of online shopping, and by 2019, Fry's was forced to start closing some of its stores, but not its Wilsonville location. (Compl. ¶¶ 49–50.) Indeed, except for COVID, Fry's continued using and operating its store on the Property until Fry's went out of business and was forced to close all its remaining stores, including its store on the Property, in February 2021. (*See id.* ¶¶ 68, 116.)

After Fry's went out of business, Home Depot was initially interested in leasing the Property but later determined that it wanted to purchase the Property. (*Id.* ¶ 120.) After lengthy negotiations, Plaintiff entered into an agreement with Home Depot on March 26, 2024,

contingent on Home Depot obtaining approval to operate, including "a determination from any applicable governmental agencies that a non-conformance use at the Property is permitted." (*Id.* ¶ 121 (cleaned up).)

Instead of seeking to confirm to the Town Center regulations, to obtain a waiver allowed by the Ordinance for its use (which waiver provision has been utilized by another development in the Town Center), or to obtain approval for a change of nonconforming use (to be approved for yet another use within the Town Center), Home Depot instead insisted on filing land use applications that asked the City to confirm that its use of the Property as a home improvement warehouse store would be a continuation of Fry's lawful non-conforming use as an electronics-related retail store. (*See id.* ¶¶ 123, 124.) Accordingly, the City properly rejected Home Depot's continuation of use applications. (*Id.* ¶ 131.) But the City never had the opportunity to make a determination on any other land use applications for the Property—including any waiver application or change of nonconforming use—as Home Depot never submitted other applications. Home Depot appealed the City Council decisions to the Land Use Review Board ("LUBA") and the Oregon Court of Appeals, and both LUBA and the Court of Appeals affirmed the City Council's decisions. (Compl. ¶¶ 134–35.) After losing to the Court of Appeals, Home Depot terminated its purchase agreement with Plaintiff. (*Id.* ¶ 137.) Looking for someone to blame, Plaintiff has filed this action, unfairly setting its targets on the City.

## III. LEGAL STANDARDS

Courts must dismiss a claim as time-barred under FRCP 12(b)(6) where "the running of the statute is apparent on the face of the complaint." *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006) (internal quotation omitted). The defendant has the initial burden to show that the claims are time-barred based on the allegations in the complaint. *Evox Prods. LLC v. Chrome Data Sols., LP*, 3:16-CV-0057-PK, 2018 WL 6059530, at *10 (D. Or. Sept. 6, 2018), *report and recommendation adopted*, 3:16-CV-00057-JR, 2018 WL 6059372 (D. Or. Nov. 16, 2018) (citing *Cal. Sansome Co. v. U.S. Gypsum*, 55 F.3d 1402, 1406 (9th Cir. 1995)). Once the defendant meets its burden, the burden shifts to the plaintiff to prove that an exception to the

statute of limitations applies. *Id.* (citing *O'Connor v. Boeing N. Am.*, 311 F.3d 1139, 1150 (9th Cir. 2002)).

Courts also must dismiss a claim that "fail[s] to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). In order to survive a motion to dismiss, the facts alleged in the complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007) (cleaned up)). "A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief." *Andrade-Tafolla v. United States*, 536 F. Supp. 3d 764, 770 (D. Or. 2021). "[T]he court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party." *Id.* "To be entitled to a presumption of truth, allegations in a complaint 'may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively.'" *Id.* (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)). While the court must draw "all reasonable inferences from the factual allegations" in Plaintiff's favor, the "court need not, however, credit the plaintiff's legal conclusions that are couched as factual allegations." *Id.* (citing *Ashcroft*, 556 U.S. at 678–79).

"A complaint must contain sufficient factual allegations to 'plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.'" *Id.* at 770–71 (quoting *Starr*, 652 F.3d at 1216). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 545).

## IV. ARGUMENT

### A. MOTION 1: Plaintiff's Takings Claims Are Time-Barred and Fail to State a Claim.

It is unclear exactly what Plaintiff is alleging to be the "taking" by the City. To the extent Plaintiff is alleging that the City's "taking" of its Property is the Town Center Plan or Ordinance, which were enacted in 2019, Plaintiff's First and Second Claims for Relief are barred by their statutes of limitations: two years for federal takings claims and six years for state takings claims. Even if Plaintiff is alleging that the "taking" is the City's denial of Home Depot's specific land use continuation applications, Plaintiff's First and Second Claims should still be dismissed because they fail to sufficiently plead facts giving rise to a takings claim. Indeed, Plaintiff's own allegations concede that there are still economically viable uses of the Property.

#### 1. The Court Should Dismiss Plaintiff's Takings Claims as Time-Barred.

Federal takings claims brought under 42 U.S.C. § 1983 have a two-year statute of limitations, as "Section 1983 claims are to be characterized as personal injury actions for statute of limitations purposes." *Davis v. Harvey*, 789 F.2d 1332, 1333 (9th Cir. 1986); *Lynch v. Multnomah Cnty.*, No. 1:23-CV-01434-IM, 2024 WL 5238284, at *13 (D. Or. Dec. 27, 2024) ("[F]ederal takings claims, necessarily brought pursuant to § 1983, are subject to the two-year limitations period set by the Oregon personal injury statute, O.R.S. 12.110(1).") (footnote omitted); *Foshee v. Lane Cnty.*, No. 6:24-CV-00447-MC, 2024 WL 3970663, at *2 (D. Or. Aug. 26, 2024) ("Plaintiff's § 1983 claims are thus subject to a two-year statute of limitations").

On the other hand, Oregon state law takings claims are subject to a six-year statute of limitations. *Lynch*, 2024 WL 5238284 at *16 (the Court applied a six-year statute of limitations to Plaintiff's state law takings claims); *David Hill Dev., LLC v. City of Forest Grove*, 688 F. Supp. 2d 1193, 1223 (D. Or. 2010) ("Plaintiff's state law takings claim is subject to a six-year statute of limitations.") (footnote omitted).

The City's Town Center Plan was adopted in 2019, and the Ordinance, which limited retail building sizes to no more than 30,000 square feet, became effective on June 5, 2019.

(Compl. ¶¶ 3, 62–66). Throughout the Complaint, Plaintiff alleges that the "taking" is based—at least in part—on these 2019 regulations. For example:

- "Simply put, absent the City's regulation, the Property was worth at least $23.46 million. Burdened by those regulations, the Property is economically worthless." (*Id.* ¶ 20.)

- "The City's regulation of the Property amounts to a taking without payment of just compensation, in violation of the Fifth Amendment and Fourteenth Amendments to the United States Constitution as well as the Oregon Constitution." (*Id.* ¶ 22).

- "As such, the City's regulation of the Property has eliminated any economically beneficial use of the Property." (*Id.* ¶ 145).

- "Here, the City's regulation has eroded the Property's value by at least 95%." (*Id.* ¶ 182).

- "Absent the City's regulation, the Property was worth at least $23.46 million—the price two sophisticated parties (Lumberjack and Home Depot) agreed to after an arms-length negotiation." (*Id.* ¶ 183).

Plaintiff further specifically alleges that the alleged impact on the Property took effect immediately upon the enactment of the Ordinance (and Town Center Plan):

> "Because Fry's use violated the changes to the Zoning Code, the Property and its use became lawfully non-conforming on June 5, 2019—the effective date of Ordinance No. 835. Likewise, the Building, which is approximately 159,000 square feet, became legally non-conforming."

(Compl. ¶¶ 66–67.) In other words, the regulations that rendered the use nonconforming went into effect in 2019, and the City's land use decisions on Home Depot's continuation applications does not change the date the nonconformance was established.

The statute of limitations for federal takings claims is two years, and the statute of limitations for state takings claims is six years. Plaintiff, however, brought this lawsuit on March 20, 2026, more than six years after the Ordinance and Town Center Plan became effective and Plaintiff's use of the Property became nonconforming. Therefore, to the extent Plaintiff's takings claims are based on the Ordinance or Town Center Plan, Plaintiff's claims are time-barred and should be dismissed.

**2. Alternatively, the Court Should Dismiss Plaintiff's Takings Claims for Failure to State a Claim.**

Even if Plaintiff's takings claims are based on the City's denial of Home Depot's specific land use applications, Plaintiff's takings claims should still be dismissed for failure to state a claim.

The Takings Clause of the Fifth Amendment prohibits the government from taking "private property . . . for public use, without just compensation." U.S. Const. amend. V. Generally, there are two methods to establish whether a governmental regulation is equivalent to a federal taking requiring just compensation. First, "when the owner of real property has been called upon to sacrifice *all* economically beneficial uses in the name of the common good, that is, to leave his property economically idle, he has suffered a taking." *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1019 (1992). "Anything less than a 'complete elimination of value,' or a 'total loss' . . . would require the kind of analysis applied in *Penn Central.*" *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302, 330 (2002) (quoting *Lucas*, 505 U.S. at 1019–20). "When considering whether a regulation constitutes a taking under *Penn Central*, courts generally consider three factors: (1) the regulation's interference with reasonable investment-backed expectations, (2) the economic impact of the regulation, and (3) the character of the government action." *Pharm. Rsch. & Mfrs. of Am. v. Stolfi*, 153 F.4th 795, 834 (9th Cir. 2025) (citing *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 124 (1978)).

Moreover, in a § 1983 action, the plaintiff must demonstrate that the defendant's conduct was the actionable cause of the claimed injury. *Arnold v. IBM Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981). To meet the causation requirement, the plaintiff must establish both causation-in-fact and proximate causation. *See id.* This requirement applies to takings claims "as much as it would any other § 1983 claim." *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 216 F.3d 764, 783 (9th Cir. 2000), *aff'd* 535 U.S. 302 (2002), *overruled on other grounds by Gonzalez v. Arizona*, 677 F.3d 383 (9th Cir. 2012); *Esplanade Props., LLC v. City of Seattle*, 307 F.3d 978, 984 (9th Cir. 2002).

Similarly, to establish a regulatory takings claim under the Oregon Constitution, "[t]he property owner must show that the application of the government's particular choice deprives the owner of *all economically viable use of the property*. . . . If the owner has 'some substantial beneficial use' of the property remaining, then the owner fails to meet the test." *Boise Cascade Corp. v. Bd. of Forestry*, 325 Or. 185, 198 (1997) (quoting *Dodd v. Hood River Cnty.*, 317 Or. 172, 184–86 (1993) (emphasis added; cleaned up).

Here, Plaintiff has failed to state a takings claim under either the federal or state constitutions.

**(a) Plaintiff's Federal Takings Claim Fails to State That Any Land Use Decision by the City Deprived Plaintiff of All Economically Viable Uses.**

Plaintiff alleges that the Property has been deprived of all economically viable uses because the City determined that the building's lawfully non-conforming use was limited to an "electronics-related retail store," and that any other lawful use of the Property under the Ordinance is not economically viable. (Compl. ¶¶ 165–76, 194.) Plaintiff's conclusory allegation does not save its failure to state a legal claim.

First, Plaintiff admits that it decided to invest substantial amounts of money retrofitting the Property for Fry's use as an electronics-related retail store, and that Fry's successfully operated out of the Property for decades. (Compl. ¶¶ 2, 37, 49, 116.) Plaintiff also admits that Fry's continued to operate out of the Property after the Ordinance and Town Center Plan went into effect in 2019, and that although Fry's went out of business in 2021, Fry's was already struggling nationwide. (*Id.* ¶¶ 64–67, 116.) Fry's ultimate decision to close its stores, including at the Property, had nothing to do with the Ordinance or Town Center Plan.

Plaintiff is now claiming that its alleged $23 million Property allegedly has no economically viable use, but Plaintiff's alleged financial difficulties were not caused by any regulations or land use decisions by the City. Rather, if Fry's were still in business, Plaintiff never would have filed this lawsuit and would still be receiving income. Plaintiff alleged in its

Complaint that it "has not earned any money from the Property since Fry's closed[,]" acknowledging that Fry's closure is the reason for its current vacancy, not any action by the City. (*Id.* ¶ 154.) Yet, because Fry's went out of business and Plaintiff is allegedly struggling to find a replacement tenant or sell the Property at the price it wants, Plaintiff is now improperly directing its frustrations at the City. Simply put, Plaintiff has failed to state facts sufficient to establish a causal relationship between any regulation or land use decision by the City and the Property's alleged deprivation of all economically viable use. *See Tahoe-Sierra*, 216 F.3d at 785 (affirming that the public agency's actions were not cause of any taking because the agency could not have foreseen its plan would be enjoined and because the injunction was for the reason that the plan was not restrictive enough).

Second, merely claiming that the Property has been deprived of all economically viable use is a legal conclusion to which this Court need not credit in deciding the City's Motion. *See Andrade-Tafolla*, 536 F. Supp. 3d at 770 (citing *Ashcroft*, 556 U.S. at 678–79). Rather, Plaintiff has admitted that there remain economically viable uses of the Property. In particular, Plaintiff admits that the Property can continue to be used as an electronics-related retail store, even a big-box electronics-related retail store. (Compl. ¶ 11.) Plaintiff also admits that other big-box retailers are still interested in the Property. (*Id.* ¶ 115.) Plaintiff's struggle to find a replacement tenant does not constitute a taking or establish that the Property has no economically beneficial use.

Moreover, Plaintiff's claim that its allegedly $23 million Property now has zero economic value is based on the City's decision in a narrow, fact-specific land use process utilized by Home Depot. (*See id.* ¶ 183.) Plaintiff has not (and cannot) plead that there are no other alternative land use processes available to Plaintiff or any other potential tenant or purchaser of the Property—like requesting a waiver of any land use regulations adopted in the Ordinance or applying for a change of nonconforming use, which was approved for another use in the Town Center while the Home Depot applications were pending.

/ / /

Simply put, Plaintiff has not pled facts establishing that it has been deprived of all economically beneficial uses of its Property. By Plaintiff's own allegations, Plaintiff's long-standing tenant unfortunately shut down due to its own financial struggles. Plaintiff has been unsuccessful in finding a replacement tenant, and now, Plaintiff is blaming its lack of success on the City. But, as Plaintiff admits, there is still economically beneficial use in the Property. Plaintiff has not suffered "a complete elimination of value" or "total loss" because of the City's actions, and accordingly, Plaintiff cannot claim that a per se regulatory taking has occurred. *Tahoe-Sierra Pres. Council, Inc.*, 535 U.S. at 330 (cleaned up).

**(b) Plaintiff Fails to State a Regulatory Taking Under *Penn Central.***

Plaintiff also fails to plead facts sufficient to state a regulatory taking under each of the *Penn Central* factors: "(1) the regulation's interference with reasonable investment-backed expectations, (2) the economic impact of the regulation, and (3) the character of the government action." *Stolfi*, 153 F.4th at 834 (citing *Penn Cent. Transp. Co.*, 438 U.S. at 124).

First, Plaintiff fails to sufficiently plead the economic impact of the City's decision on Home Depot's narrow land use applications. Plaintiff alleges that Home Depot was willing to purchase the Property for $23.46 million and then terminated the deal due to the City's denial of Home Depot's specific land use applications. (Compl. ¶¶ 181–86.) However, Plaintiff has admitted that economic use of the Property remains available, including its continued use as an electronics-related retailer. (*Id.* ¶¶ 66, 126.) Plaintiff also fails to allege that there were no other land use paths available for Home Depot or any other potential tenant or purchaser, like requesting a waiver of the Ordinance or seeking a change of nonconforming use. The City's denial of Home Depot's specific land use applications is not sufficient to state a claim for the required economic impact under *Penn Central*. If it were, then every denial of a land use application by a land use body would result in a federal takings claim.

Second, Plaintiff fails to sufficiently plead that the City's denial of Home Depot's land use applications interfered with reasonable investment-backed expectations. Plaintiff alleges that

limiting the Property to electronics-related retail was not foreseeable when Plaintiff purchased the Property. (Compl. ¶¶ 187–95.) But Plaintiff improperly conflates the City's denial of Home Depot's specific land use applications with a blanket prohibition on all uses of the Property. Second, even assuming that the Property's use were limited to electronics-related retail, such a use would be consistent with Plaintiff's reasonable investment-backed expectations, as Plaintiff invested significant amounts of money to retrofit the Property for an electronics-related big-box retailer shortly after Plaintiff purchased the Property. (*Id.* ¶ 37.) In addition, "when buying a piece of property, one cannot reasonably expect that property to be free of government regulation such as zoning, tax assessments, or . . . . rent control." *Rancho de Calistoga v. City of Calistoga*, 800 F.3d 1083, 1090–91 (9th Cir. 2015) (stating that plaintiff's argument that it had an investment-backed expectation to be free from rent control was not valid). Similarly, here, it is not a reasonable investment-backed expectation that Plaintiff would be free from zoning ordinances for the duration of its decades-long ownership of the Property.

Finally, Plaintiff fails to sufficiently plead that the character of the government action favors Plaintiff under the *Penn Central* analysis. Plaintiff alleges that it is disproportionately affected by the regulations compared to the neighboring properties and is the only building that has been rendered unusable. (Compl. ¶¶ 196–206.) Yet, as described above and as alleged in the Complaint, the City's denial of Home Depot's specific land use applications is not the cause of Plaintiff's alleged current financial difficulties. But for Fry's business shutdown, Plaintiff would not be asserting a claim here, as Plaintiff would still have a paying tenant on the Property and could not allege that the Property has no economically viable use. Furthermore, Plaintiff admits that there are other businesses affected by the Ordinance that have stores over 30,000 square feet, which indicates that this Ordinance does not place a much higher burden on Plaintiff than other property owners in the area. (*Id.* ¶ 199.) Nor does Plaintiff allege that other properties in the area have filed specific land use applications like Home Depot or had long-standing tenants go out of business. (*See id.* ¶¶ 200–01.)

**(c) Plaintiff Fails to State a Regulatory Taking Claim Under the Oregon Constitution.**

Under Oregon law, establishing a regulatory taking is essentially the same as the *Lucas* test applied to federal takings claims: Plaintiff must properly allege that it has been deprived of all economically beneficial uses of its Property. *Boise Cascade Corp*, 325 Or. at 197–98. For the same reasons stated herein with respect to the federal takings claim, Plaintiff has failed to meet this state standard because Plaintiff's own allegations acknowledge that it has not been deprived of *all* economically beneficial uses of its Property. Accordingly, Plaintiff's state takings claim should also be dismissed.

**B. MOTION 2: Plaintiff's Dormant Commerce Clause Claim Should Be Dismissed for Failure to State a Claim.**

Plaintiff fails to allege that the Ordinance, Town Center Plan, or the specific Home Depot land use decisions discriminate against interstate commerce. There are two ways to establish a substantive violation of the Dormant Commerce Clause: the anti-discrimination test and the balancing test for non-discriminatory laws (*Pike* test). The anti-discrimination test states that a regulation violates the Dormant Commerce Clause "[w]hen a state statute directly regulates or discriminates against interstate commerce, or when its effect is to favor in-state economic interests over out-of-state interests. . . ." *Rosenblatt v. City of Santa Monica*, 940 F.3d 439, 444 (9th Cir. 2019) (internal citations omitted). "A local law directly regulates interstate commerce when it directly affects transactions that take place across state lines or entirely outside of the state's borders." *Id*. at 445. Further, a local law does not favor in-state interests over out-of-state interests when it generally applies to all businesses, both in-state and out-of-state. *See Am. Fuel & Petrochemical Mfrs. v. O'Keeffe*, 903 F.3d 903, 914 (9th Cir. 2018) (holding that "[u]nder the Oregon program, producers of higher carbon intensity fuels are disfavored relative to *all* lower carbon-intensity fuels, including those produced outside of Oregon. This is plainly permissible.").

/ / /

The balancing test, or the *Pike* test, applies when the regulation has indirect effects on interstate commerce and considers "whether the State's interest is legitimate and whether the burden on interstate commerce clearly exceeds the local benefits." *Rosenblatt*, 940 F.3d at 444 (internal quotation omitted) (the *Pike* test originates from *Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970).) "Under *Pike*, a plaintiff must demonstrate that a challenged law imposes a 'substantial' or 'significant' burden on interstate commerce before *Pike* balancing can occur." *Flynt v. Bonta*, 131 F.4th 918, 925, 931 (9th Cir. 2025), *cert. denied*, No. 25-173, 2026 WL 79841 (U.S. Jan. 12, 2026) (further stating that the "Supreme Court has not invalidated a law under *Pike* in more than 30 years") (internal citation and quotation omitted). Plaintiff has failed to state a Dormant Commerce Clause Claim under either the anti-discrimination or balancing tests.

### 1. Plaintiff Has Failed to Sufficiently Plead that the Town Center Plan, Ordinance, and Home Depot Land Use Decisions Directly Discriminate Against Interstate Commerce.

The Town Center Plan and Ordinance limited retail building sizes to 30,000 square feet and required walkable development instead of car-dependent uses. (Compl. ¶¶ 64–65.) This solely impacts transactions within the City and no further. *See Rosenblatt*, 940 F.3d at 445–446 (9th Cir. 2019) (holding that ordinance imposing restrictions on short-term rentals was not direct or indirect discrimination on interstate commerce because it only affected conduct within the city, regardless of its effect on in-state or out-of-state visitors). Plaintiff also alleges that a City official stated that the City did not want national retailers like Home Depot to occupy the Property, and that the City enacted the Ordinance to attract and retain local businesses. (Compl. ¶¶ 225–27.)

However, Plaintiff has not alleged that the Town Center Plan or Ordinance themselves directly discriminate against interstate commerce. Plaintiff does not cite any discriminatory language within the Town Center Plan or Ordinance; Plaintiff also does not allege that the Town Center Plan or Ordinance impose restrictions beyond the City. A City official's alleged remarks

to Plaintiff (even if true, and they are not), are not enough to establish that the Town Center Plan or Ordinance are directly discriminating against interstate commerce.

The Town Center Plan and Ordinance also would apply to both in-state and out-of-state big-box retailers on the Property and do not specifically target out-of-state retailers. *See Wal-Mart Stores, Inc. v. City of Turlock*, 483 F. Supp. 2d 987, 1012 (E.D. Cal. 2006) (regulation was not facially discriminatory because any retailer, in-state and out-of-state, could operate in city, just not in a discount superstore format). Accordingly, the Town Center Plan and Ordinance do not facially discriminate against interstate commerce or have a discriminatory purpose. For similar reasons, the City's denial of Home Depot's specific land use applications does not facially discriminate against interstate commerce or have a discriminatory purpose.

**2. Plaintiff Has Failed to Sufficiently Plead that the Town Center Plan, Ordinance, and Home Depot Land Use Decisions Have a Discriminatory Effect on Interstate Commerce.**

The Town Center Plan, Ordinance, and the City's denial of Home Depot's specific land use applications also do not have a discriminatory effect on interstate commerce. To have a discriminatory effect on interstate commerce, Plaintiff would have to show that there is a "differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *See Montana v. City of Portland*, No. 3:23-CV-00219-YY, 2025 WL 1809258, at *5 (D. Or. Apr. 8, 2025), *report and recommendation adopted*, No. 3:23-CV-00219-YY, 2025 WL 2521174 (D. Or. Sept. 2, 2025) (internal quotation omitted).

Here, Plaintiff fails to allege that there is a discriminatory effect on interstate commerce. The zoning requirements and building size requirements apply to all businesses, in-state and out-of-state, regardless of whether the City is trying to attract and retain local businesses in general. Whether the City wants national retailers like Home Depot on the Property or not, Plaintiff has acknowledged that stores such as Best Buy and Micro Center, which are national retailers, could use the Property under the Town Center Plan, Ordinance, and specific land use decisions, and that the "the only interested users [of the Property] were (and are) big box retailers." (Compl. ¶¶ 142, 115). Moreover, Fry's was a national retailer and was leasing the Property after the Town

Center Plan and Ordinance were enacted, before Fry's went out of business. (*Id.* ¶ 116). Therefore, Plaintiff has failed to sufficiently plead a discriminatory effect on interstate commerce.

**3. Plaintiff Has Failed to Sufficiently Plead that the Town Center Plan, Ordinance, and Home Depot Land Use Decisions Place a Substantial Burden on Interstate Commerce.**

Finally, Plaintiff has failed to plead that the Town Center Plan, Ordinance, or Home Depot's specific land use decisions place a "significant" or "substantial" burden on interstate commerce to satisfy the *Pike* test. *Flynt*, 131 F.4th at 925 (internal quotation omitted). The only cases that allege a significant burden on interstate commerce under *Pike* are cases that address "regulation of activities that are inherently national or require a uniform system of regulation . . . most typically, interstate transportation." *See Chinatown Neighborhood Ass'n v. Harris*, 794 F.3d 1136, 1146 (9th Cir. 2015) (cleaned up). The City adopted the Town Center Plan and Ordinance to make a specific area within the City mixed-use and walkable, which only affects this certain part of the City. (Compl. ¶¶ 3, 53.) This is not a national issue or one requiring a uniform system of regulation. Plaintiff then alleges that big-box retailers are unable to use the Property, and that it would cost Plaintiff an "inordinate amount of money to comply" with the Town Center Plan and Ordinance. (Compl. ¶ 235–36). But Plaintiff seems to improperly conflate a substantial burden on interstate commerce with what Plaintiff feels is a burden on its own use of the Property. Limiting the building size and types of retailers' use of a particular building is not a "substantial burden" on interstate commerce, nor is the City's denial of Home Depot's specific land use applications. Accordingly, Plaintiff's Complaint fails to satisfy *Pike* or otherwise state a Dormant Commerce Clause claim.

## V. CONCLUSION

For the reasons explained above, the City respectfully requests that the Court dismiss Plaintiff's Complaint in its entirety.

/ / /

/ / /

DATED: May 4, 2026.

CABLE HUSTON LLP

s/ Nicole M. Swift

Nicole M. Swift, OSB No. 141419
nswift@cablehuston.com
Nicole A.W. Abercrombie, OSB No. 144581
nabercrombie@cablehuston.com
Olivia M. Loftin, OSB No. 225812
oloftin@cablehuston.com
1455 SW Broadway, Suite 1500
Portland, OR 97201-3412
(503) 224-3092 Telephone

*Attorneys for Defendant City of Wilsonville*

**CERTIFICATE OF COMPLIANCE**

This brief complies with the applicable word-count limitation under LR 7-2(b), 26-3(b), 54-1(c), or 54-3(e) because it contains 5,317 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.